IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JERRY WAYNE KITCHENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 03-CO-1840-W |
| ) | |
| PRISON HEALTH SERVICES, INC., and ) | |
| NAPHCARE, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The plaintiff in this action has filed a complaint alleging various claims against the defendants premised on the medical treatment provided to him during the last three years. The defendants have filed motions to dismiss the complaint. (Doc. 27 & 29). The plaintiff does not attempt to state a cause of action against the defendants in their official capacities, but instead asserts allegations against the defendants in their individual capacities only. The plaintiff asserts that the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment and in contravention of Title 42, United States Code, Section 1983. (Complaint at Count One). He also alleges that they conspired to deprive him of civil right to appropriate medical treatment, in contravention of Title 42, United States Code, Section 1985. (*Id*. at Count Two). Next, he alleges that the defendants failed to prevent a conspiracy to deprive him of his right to appropriate medical care, in contravention of Title 42, United States Code, Section 1986. (*Id*. at Count Three). He further alleges that the defendants violated the Eighth Amendment in that they caused him "severe personal injury, substantial and continuing physical pain and suffering, and mental and emotional anguish." (*Id*. at Count Four, ¶ G-3). Finally, he alleges a

breach of contract claim against the defendants premised on their failure to provide appropriate medical care and treatment pursuant to contracts between the defendants and the Alabama Department of Corrections. (*Id*. at Count Five). The plaintiff seeks monetary damages. (*Id*.).

The defendants have filed their motions to dismiss the plaintiff's complaint asserting that the plaintiff has failed to state a claim upon which relief can be granted because they cannot be held liable on a *respondeat superior* theory, and that the contract claim is due to be dismissed because he has failed to state a cognizable claim. (Doc. 27 & 29).

## MOTION TO DISMISS STANDARD

On a motion to dismiss, the court "must accept the allegations set forth in the complaint as true. *See United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc)." *Lotierzo v. Woman's World Medical Center, Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Similarly, it must construe all the factual allegations in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1947)). Such a motion may be granted only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957)." *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.), *cert. denied*, 525 U.S. 1000, 119 S. Ct. 509, 142 L. Ed. 2d 422 (1998).

## DISCUSSION

In the complaint, the plaintiff asserts that during the evening of April 20, 2002, while he was confined at the Bibb County Correctional Facility, he fell from his top bunk, striking the

concrete floor. (C-3).[1] He suffered a broken left shoulder and damaged his knee as a result of the fall. (C-4). The plaintiff was taken to the infirmary around 2:00 a.m. that night. He remained there until about 2:00 p.m. on the next day. (C-5). He was then taken to Brent Hospital where it was confirmed that he had a broken shoulder bone, a concussion, and a badly bruised left knee. (C-6). No additional treatment was rendered at the hospital. (C-7). The defendant was returned to Bibb Correctional Facility where he remained for the next eleven days. (C-8). During this period, he received some unspecified pain medication and a sling for his left arm. (C-9).

On or about May 2, 2002, after the eleven days, he was moved to a bottom bunk at the institution. (C-10). Over the next four months, medical personnel took four sets of x-rays, but no medical intervention was performed. (C-11).

In August 2002, the plaintiff was returned to a top bunk at the institution. (C-13). He continued receiving pain medication and x-rays, but no other treatment was rendered. (C-14).

During February and March 2003, he was taken to an orthopedic physician in Gardendale, Alabama. (C-15). Additional x-rays were taken. It was determined that surgical intervention was necessary. (C-16). The surgery was performed on March 6, 2003. (*Id.*). It did not provide him with any relief from the pain. (*Id.*).

On May 1, 2003, a correctional officer[2] grabbed the plaintiff by his left foot and attempted to pull him off the bunk. (C-18). This resulted in the plaintiff's shoulder and knee being re-injured. (*Id.*). On May 29, 2003, the plaintiff was re-seen by the surgeon. He

---

[1] References are to the paragraphs of the plaintiff's complaint.

[2] The plaintiff initially identified the officer as Reginald Phillips.

performed a second surgery on the plaintiff. (*Id*.). The plaintiff was returned to the institution infirmary for nine days. (C-20). According to the plaintiff, two nurses ("Bingham and King") refused to give him the pain medication (Tylenol 3) that the surgeon had prescribed. (C-22). He continued having medical issues from June 7, 2003, until July 22, 2003, and the medical staff refused to see him. (*Id*.). Specifically, he states that "his pain was incessant, his left shoulder filled with pus, the medical staff refused to change his bandages daily as they were supposed to do, and pain medications were not provided." (*Id*.).

The plaintiff returned to the surgeon in July 2003. The surgeon tried to "clean up his infected shoulder and prescribed four (4) medications." (C-23).

The plaintiff was sent to another physician on April 2, 2004. Additional x-rays were taken. The plaintiff was informed that additional surgery was required, but the physician was unwilling to perform it because his shoulder "was so messed up." (C-24). Since that time, the plaintiff has continued to suffer serious pain and discomfort. (C-25 to 26).

Defendant NaphCare, Inc., was the medical care provider at Bibb Correctional Facility for the Alabama Department of Corrections until November 2, 2003. (B-2). Prison Health Services, Inc., has been the medical care provider since replacing NaphCare. (B-4).[3]

### *Respondeat Superior* Liability

The defendants assert that because they are acting on behalf of the State as the healthcare provider, they cannot be held personally liable under a *respondeat superior* theory pursuant the federal civil rights statutes. Specifically, they assert that the plaintiff's complaint fails to

---

[3] Officer Reginald Phillips was a defendant in this action until the plaintiff's counsel determined that he had been "misidentified" by the plaintiff. (Doc. 52). He was dismissed with prejudice on the motion of the plaintiff. (Doc. 53).

adequately allege "a policy, practice [or] custom" occurring at the direction of these defendants to warrant liability on their part. Therefore, they assert that the plaintiff has failed to state a cognizable claim. (Doc. 27 & 29 at ¶ 4). The plaintiff responds that the defendants are overreaching in their expectations of what a complaint must allege and their motions are premature. (Doc. 28).

*Respondeat superior* liability is permissible only when the supervising entity has some official policy, practice, or custom which causes an employee to violate another's constitutional rights. *See Monnell v. New York City Dept. of Social Services*, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). To state a claim against these defendants, the plaintiff in this case is required to allege, and ultimately demonstrate, that some official policy, practice, or custom of NaphCare and Prison Health Services resulted in injury to him.

In support of their position, the defendants cite to *Edwards v. Alabama Department of Corrections*, 81 F. Supp. 2d 1242 (M.D. Ala. 2000). In *Edwards*, a case involving the segregation of HIV-inmates from the general population and the purported failure to provide certain medical care by Correctional Medical Services, Inc., the court stated:

> . . . . In order to prove that CMS should be liable, the plaintiffs would have to demonstrate that CMS itself directly caused the violation of their constitutional rights through their adoption of some official policy or practice. *See Monell v. Department of Social Services*, 436 U.S. 658, 695, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502-03 (11th Cir. 1985). A theory of respondeat superior is not sufficient to support their § 1983 claim; assertions that the city was generally responsible for the actions of its doctors do not provide a direct enough link between the CMS's behavior and the inmate's injury to prove liability. *See Monell*, 436 U.S. at 691-92, 98 S. Ct. at 2036-37.
>
> In this case, the plaintiffs allege that the inadequacies in the medical care that they receive result directly from the policies and customs of CMS.

> Specifically, their allegations include that CMS has instituted a policy or custom of denying HIV-positive inmates certain necessary medications, improperly administering the medications that are provided, failing to respond to medical emergencies, and denying all care to inmates who are near death. Although the plaintiffs have not provided specific evidence demonstrating that such policies exist or that such practices are so wide-spread and entrenched as to constitute official "customs," at this stage the court must construe the allegations liberally in the plaintiffs' favor and assume that all of their allegations are true. Because the plaintiffs could make out a valid claim if they did prove these allegations, the court concludes that the claims against CMS should not be dismissed.

*Edwards*, 81 F. Supp. 2d at 1255.

The court finds that the plaintiff in this case has not alleged the requisite causal connection and, therefore, the motions are due to be granted. Simply stated, the plaintiff has failed to allege any policy, practice, or custom sufficient to impose liability on these defendants as required. *See Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997), *cert. denied*, 522 U.S. 1018, 118 S. Ct. 608, 139 L. Ed. 2d 495 (1997) (the plaintiff must show that some policy or custom of the health care provider caused the infliction of the injury in order to impose § 1983 liability on a health care provider).

To the extent that the plaintiff asserts that *Edwards* is not controlling because it does not stand for the proposition "that a private person (i.e., NAPHCARE) enjoys the immunity afforded to the State itself (under Article I, § 13 of the Alabama Constitution) when so contracting with the State," the court notes that this is not the basis for granting the motions as to the plaintiff's civil rights claims. (Doc. 28 at p. 3). To the contrary, the basis of the dismissal is the lack of sufficient allegations to support a claim for relief.[4]

---

[4] The court's reasoning is applicable to the plaintiff's §§ 1985 and 1986 claims as well. *See Eiland v. Hardesty*, 564 F. Supp. 930, 934 (N.D. Ill. 1982) ("To state a claim against a city under § 1985 the complaint must allege an official policy or custom which relates to matters stemming from or resulting in the conspiracy. . . . The city's liability will only rest upon its own actions, rather than on the theory of *respondeat superior*."); *Saniat v. City of Chicago*, 2003 WL 22964373, *3 (N.D. Ill.) (same); *Maggio v. O'Brien*, 497 F. Supp. 870, 875 (E.D. Pa. 1980) ("the *Monell* analysis that liability under § 1983 cannot be predicated

**State Law Claim**

The plaintiff also asserts a state law contract claim as a third party beneficiary. (Count Five). The defendants assert that it is due to be dismissed because it is, in fact, a malpractice claim that is improperly pled as a contract claim. (Doc. 27 & 29 at ¶ 5). The plaintiff counters that the claim is adequately pled. (Doc. 28 at pp. 4-6).

Because the plaintiff's federal claims no longer remain, the court declines to exercise its supplemental jurisdiction over the contract claim. *See* 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction over a claim where the court "has dismissed all claims over which it has original jurisdiction").

In deciding whether to file the contract law claim in state court counsel for the plaintiff is directed to § 1367(d) which provides that the period of limitations shall be tolled on the dismissed claim while the federal case was pending and for a period of thirty days after it is dismissed. 28 U.S.C. § 1367(d). Counsel is further directed to the case of *Yon v. Riley*, 2002 WL 1268394 (M.D. Ala. May 29, 2002), where the plaintiff brought, among other claims, a breach of contract claim against the defendant doctor who performed a surgical procedure on her ear, which resulted in nerve damage. She also brought a contract claim against the medical center where the procedure was performed. In dismissing the contract claims, United States District Judge Myron Thompson stated:

---

on *respondeat superior* applies with equal force to § 1985"); *Dier v. City of Hillsboro*, 2004 WL 1243845, *8 (D. Or.) (liability under § 1985 may not be based on *respondeat superior*; *Vasquez v. City of Reno*, 461 F. Supp. 1098, 1102 (D. Nev. 1978) (the plaintiff's failure to allege that the city defendant had a policy or custom of refusing or neglecting to prevent commissions of violations necessitated dismissal of the complaint in a § 1986 case).

Additionally, the court notes that the § 1985 claim is due to be dismissed because vague and conclusory allegations respecting the existence of a conspiracy are insufficient. *Vasquez*, 461 F. Supp. at 1101. *See also Fullman v. Graddick*, 739 F.2d 553, 563 (11th Cir. 1984) (vague and conclusory claims of conspiracy are insufficient).

7

The Alabama Supreme Court has held that a medical-malpractice-contract claim cannot be based on a legal duty. For instance, *Lemmond v. Sewell*, 473 So. 2d 1047 (Ala. 1985), the court examined the relationship between contract and tort claims for medical malpractice. In *Lemmond*, the plaintiff sought to recover damages for an alleged promise by physicians to render medical care. The trial court granted the physician's motion to dismiss, and the Alabama Supreme Court affirmed.

The *Lemmond* court first examined *Berry v. Druid City Hospital Board*, 333 So. 2d 796 (Ala. 1976). The *Berry* case held that "the law does not imply a contract to exercise due care in the delivery of medical services . . . but does impose a duty to do so, the breach of which gives rise to a tort action." *Lemmond*, 473 So. 2d 1048-49. The Lemmond court endorsed this view, holding that when either a doctor or a hospital breaches the duty of due care in delivery of medical services, resulting in injury, "a tort claim, but not a contract claim, arises." *Id.* at 1049.

In *Marsh v. St. Margaret's Hospital*, 535 So. 2d 147 (Ala. 1988), the Alabama Supreme Court again held that there was no breach of contract action against a physician and hospital for injuries allegedly resulting from treatment and care provided after a car accident. The court cited *Berry* and *Lemmond*, and held that "we find no express contract existed" and therefore defendants were entitled to judgment as a matter of law. *Marsh*, 535 So. 2d at 150.

Earlier, in *Bonds v. Brown*, 368 So. 2d 536 (Ala. 1979), the Alabama Supreme Court held that the defendant hospital was not liable for injuries based on a contract theory. The plaintiff contended that the hospital had agreed to provide "safe and sufficient surroundings" and breached the contract by failing to maintain the room properly, causing the plaintiff to fall. *Bonds*, 368 So. 2d at 537. The court found plaintiff's contract claim "did no more than restate in contract terms a breach of duty imposed by law, i.e., it simply restated the negligence claim." *Id.* at 538. Although the dissent in *Bonds* argued that a contract claim could be brought based on a legal duty, when *Lemmond* was decided the *Bonds* dissenting justice recognized that this view was not the view of the court and concurred in Lemmond's holding. *Lemmond*, 473 So. 2d at 1049 (Beatty, J. concurring specially). It is therefore clear that, in Alabama, an implied-contract claim may not be based on a legal duty.

In general, contract claims for malpractice arise when the physician has guaranteed a certain result rather than agreed to provide a standard of case. *See* 61 Am. Jur. 2d Physicians, Surgeons, and Other Healers § 287 (2002) ("Absent an allegation that a defendant physician has undertaken a special contractual obligation other than to provide adequate medical service, no cause of action for

8

breach of contract is stated."). *See also Monroe v. Long Is. Coll. Hosp.*, 84 A.D. 2d 576, 443 N.Y.S. 2d 433 (N.Y.A.D. 1981) (cause of action for breach of contract will not be sustained where it is merely a redundant pleading of plaintiff's malpractice claim or an attempt to plead as a contract action one which is essentially a malpractice action). Yon makes no such allegation here.

Yon's breach-of-contract claims are based on the legal duty to provide adequate care and therefore do not state a claim upon which relief may be granted under Alabama law. . . .

*Yon*, 2002 WL 1268394 at *3-4.

## CONCLUSION

For the reasons stated above, the court finds that the defendants' motions to dismiss (doc. 27 & 29) are due to be granted as to the plaintiff's federal civil rights claims (Counts One through Four). The court further declines to exercise its supplemental jurisdiction on the remaining contract claim. Accordingly, it is due to be dismissed without prejudice to the plaintiff's right to file the same in state court.

The Clerk of the Court is **DIRECTED** to serve a copy of this memorandum opinion upon counsel of record.

Done this 15th day of March 2005.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
105854